FIRST CITIZENS BANK & TRUST COMPANY v. DR. JOHN D. LAR-
SON; WILLIAM J. SKELDON; ROBERT A. SKELDON AND ROB-
ERT J. POWELL, JR.

No. 7412SC461

(Filed 17 July 1974)

1. **Registration § 1; Uniform Commercial Code § 33— holder of promissory note — no duty to record security agreement**

   The holder of a promissory note had no duty to record the security agreement in order to protect the collateral for accommodation endorsers of the note.

2. **Uniform Commercial Code § 33— failure to record security agreement — impairment of collateral**

   Whether failure of the holder of a note to record the security agreement constitutes an unjustifiable impairment of collateral so as to discharge accommodation endorsers depends upon the facts of the particular case. G.S. 25-3-606.

3. **Uniform Commercial Code § 33— failure to record security agreement — impairment of collateral**

   Failure of the holder of a promissory note to record the security agreement did not constitute an unjustifiable impairment of the collateral, and accommodation endorsers of the note remained bound to the holder pursuant to their endorsements after the collateral was sold by the trustee in bankruptcy of the debtor, where it appears that plaintiff was relying primarily on the endorsers and not the collateral, the endorsers were all interested in the loan, and the endorsers had knowledge of the financial situation of the maker.

4. **Attorney and Client § 7— action on note — attorneys' fees provision — notice — letter after case heard but before judgment**

   In an action against endorsers of a promissory note to collect the balance due on the note, a letter sent by plaintiff's attorney to the endorsers after the court heard the case and indicated that judgment would be entered for plaintiff but some six months prior to the actual entry of judgment sufficiently complied with the requirement of G.S. 6-21.2(5) that notice be given of the holder's intention to enforce the attorneys' fees provision of the note.

ON *certiorari* to review the order of *Brewer, Judge,* entered at 18 September 1972 Mixed Session, Superior Court, CUMBER-LAND County. Heard in the Court of Appeals 30 May 1974.

Plaintiff brought this action to collect from defendants as endorsers the balance due on a promissory note made by the Brownie Sandwich Shoppe, Inc., and dated 29 September 1970. In addition to interest, plaintiff asked for "reasonable attorneys' fees as provided by statute and by the note, in the amount of

$1,055.32." As security for the payment of the note certain restaurant equipment was pledged as collateral.

Defendants answered admitting that they signed as accommodation endorsers a promissory note of the Brownie Sandwich Shoppe, Inc., in the sum of $8,967.24 which note was secured by restaurant equipment and collateral inventory by separate security agreement. All other allegations were denied. As a defense, they alleged that the value of the collateral was at all times sufficient to satisfy the indebtedness alleged by plaintiff; that the plaintiff negligently failed to record or file the security agreement and negligently failed to perfect its lien and permitted the collateral to be taken and sold by the Trustee in Bankruptcy of the maker of the note, who received $7,167.50 from the sale of the collateral which amount is being held for the benefit of creditors of the maker. Defendants further allege that plaintiff unjustifiably impaired and lost the collateral given it "for the promissory note on behalf of the defendants and thereby discharged them."

The matter was heard on two stipulations of facts—one filed 22 September 1972 and one filed 8 August 1973—as follows:

"STIPULATION OF FACTS (Filed September 22, 1972)

The parties to this action do hereby stipulate as to the following facts:

On September 29, 1970, Brownie Sandwich Shoppes, Inc., executed its note to the plaintiff in the amount of $8,967.24 in the form of Exhibit A to Complaint. The defendants subsequently endorsed the note as accommodation endorsers. All parties understood that the proceeds of the note would be used to acquire certain restaurant equipment and fixtures. All endorsers at all times believed and understood that such equipment was to constitute collateral security for the repayment of such note. The transaction was completed on or about October 20, 1970, and the plaintiff received a security agreement executed in proper form for recordation, covering the restaurant equipment and fixtures purchased by Brownie Sandwich Shoppes, Inc. said agreement being in the form of Exhibit I to the Answer of the defendants, Larson and Powell. On or about March 4, 1971, Brownie Sandwich Shoppes, Inc. was declared a bankrupt

pursuant to a voluntary petition executed on its behalf by its President, William J. Skeldon. The trustee in bankruptcy acquired title to the property covered by the unrecorded security agreement, free and clear of any lien. On or about June 25, 1971, the trustee in bankruptcy sold the collateral covered by the unrecorded security agreement for the sum of $7,167.50. The plaintiff received the sum of $345.30 on the claim it filed with the trustee in bankruptcy, which reduced the outstanding unpaid balance on the said note to $6,690.19."

"STIPULATION OF FACTS (Filed August 8, 1973)

THE PARTIES HERETO, THROUGH COUNSEL, stipulate and agree that the following are uncontroverted facts in this case:

1. That Robert J. Powell, Jr., was owner of a major portion of the restaurant equipment described on collateral inventory attached to security agreement; that the same was sold by him to Brownie Sandwich Shoppes, Inc. and he was paid therefor with the proceeds of the loan from First Citizens Bank and Trust Company which is the subject matter of this suit.

2. That Robert J. Powell, Jr., was landlord of Brownie Sandwich Shoppes, Inc., leasing to said corporation restaurant premises at 118 Old Street, Fayetteville, North Carolina.

3. That Dr. John D. Larson, Jr., was vice-president of Brownie Sandwich Shoppes, Inc. and was a director of said corporation.

4. That William J. Skeldon was president of Brownie Sandwich Shoppes, Inc. and was a director of said corporation.

5. That Robert A. Skeldon was secretary-treasurer of Brownie Sandwich Shoppes, Inc. and was a director of said corporation.

6. That Brownie Sandwich Shoppes, Inc. filed a voluntary petition in bankruptcy.

7. That with regard to the claim of plaintiff for attorneys' fees, no written notice was furnished in advance of suit as referred to in G.S. 6.21.2; that the case was tried by the

Court pursuant to a Stipulation of Facts; that after review-ing the facts stipulated and hearing the arguments of coun-sel, the Court advised counsel that it was going to enter judgment in favor of plaintiff but that it wished the record to show the additional stipulations contained in paragraphs 1 through 6 in this Stipulation dated the 20th day of July, 1973; that after the Court had stated it was going to rule in favor of plaintiff, counsel for defendant Robert J. Powell, Jr., notified counsel for plaintiff that he was going to move that the Court not allow attorneys' fees to counsel for plaintiff by reason of the failure to give notice required under G.S. 6.21.2; that thereafter, after the Court had heard the case and stated it was going to enter judgment for plaintiff but before the actual entry of judgment, counsel for plaintiff advised counsel for defendants by letter dated June 11, 1973, that the defendants could pay the outstanding balance due on the note in controversy without incurring the additional expense of reasonable at-torneys' fees."

From the stipulated facts, the court concluded, as a matter of law, that plaintiff had no duty to defendants to file the security agreement in order to protect the collateral for the defendant endorsers and that the "non-filing did not discharge the endorsers and they remained bound to the plaintiff pursuant to their endorsements". The court further concluded as a mat-ter of law "that the letter mailed by plaintiff's attorney to defendants' attorney on June 11, 1973, was a sufficient compli-ance with G.S. 6.21.2(5) and gave the defendants an opportunity to pay the balance of the note without incurring the additional expenses of paying reasonable attorneys' fees, and therefore entitles plaintiff to recover such attorneys' fees in this action."

The court entered judgment for plaintiff in the amount of $6,690.19 with interest from 2 January 1971 until paid at the rate of 6% and attorneys' fees in the amount of $600.00. Defend-ants appealed.

*Anderson, Nimocks and Broadfoot, by Hal W. Broadfoot, for plaintiff appellee.*

*Cameron, Harrington and Shaw, by Orton J. Cameron, for defendant appellant Larson.*

*McCoy, Weaver, Wiggins, Cleveland and Raper, by Alfred E. Cleveland, for defendant appellant Powell.*

MORRIS, Judge.

Both appellants bring forward and argue exception No. 1—whether the trial court erred in concluding, as a matter of law, plaintiff had no duty to defendants to file the security agreement to protect the collateral for defendant endorsers and that the failure to file did not discharge the endorsers and they remained bound to plaintiff pursuant to their endorsements.

The transaction giving rise to this action occurred subsequent to the effective date of the Uniform Commercial Code. We look, therefore, to its provisions for an answer to the questions raised.

Both counsel for plaintiff and defendants candidly state that they have been able to find no North Carolina cases on the question raised by both appeals. Nor have we been able to find a case exactly on point from any other jurisdiction. We go, then, to the Code itself.

G.S. 25-3-415 defines an accommodation party as "one who signs the instrument in any capacity for the purpose of lending his name to another party to it."

G.S. 25-1-201 (29) provides: " 'Party,' as distinct from 'third party,' means a person who has engaged in a transaction or made an agreement within this chapter."

G.S. 25-3-606 contains the following: " (1) The holder discharges any party to the instrument to the extent that without such party's consent the holder . . . (b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse."

[1] We find nothing in the Code nor do we find any case law requiring the holder to file the security agreement. Nor do we find anything in the stipulated facts which would impel the bank to file the security agreement. We agree with the court's conclusion that plaintiff had no duty to defendants to file the security agreement in order to protect the collateral for the defendant endorsers.

Unquestionably, under the N.I.L., (§§ 142 and 143) those acts which would discharge the instrument were not applicable to an accommodation endorser, nor was impairment of collateral one of those acts which would discharge a person secondarily liable. The impairment of collateral was generally available as a

defense to a surety. However, it has been said that the drafters of the Uniform Commercial Code were aware of the confusion which existed with respect to accommodation makers and have endeavored to make it clear that an accommodation party is always a surety, *Rose v. Homsey,* 347 Mass. 259, 197 N.E. 2d 603 (1964), where the court said (at p. 263, quoting from official comment 1 and citing G.L. c. 106, § 3-606 which is identical to our G.S. 25-3-606) : " 'suretyship defenses . . . are not limited to parties who are "secondarily liable", but are available to any party who is in the position of a surety, having a right of recourse either on the instrument or dehors it, *including an accommodation maker* or acceptor known to the holder to be so.' "

[2, 3]   Even though impairment of collateral by the holder would generally discharge the surety under the N.I.L. and even though the U.C.C. may have made that defense available to an accommodation endorser; nevertheless, we think the Code had added a requirement. The holder must have *unjustifiably* impaired the collateral. Since there is no absolute duty to file the security agreement, whether the mere failure to file would constitute an unjustifiable impairment of collateral must depend upon the facts of the particular case. Here the stipulated facts disclose that appellant Powell was the owner of a major portion of the restaurant equipment described in the security agreement, and that he sold the equipment to Brownie Sandwich Shoppe, Inc., and was paid therefor with the proceeds of the loan from plaintiff, the note for which he became endorser. Appellant Powell also owned the building in which Brownie Sandwich Shoppe, Inc., was located and leased the premises to the Shop. Appellant Larson was Vice-President of Brownie Sandwich Shoppe, Inc., and was a director of the corporation. Brownie Sandwich Shoppe, Inc. filed a voluntary petition in bankruptcy. The security agreement itself provided, among other things, that the debtor would pay the cost of filing or recording the security agreement "in all public offices wherever filing or recording is deemed by Secured Party to be necessary or desirable." It appears clear that the plaintiff was not relying on the collateral primarily but was relying on the endorsers, since the plaintiff, having retained the option of filing or not filing the security agreement, chose not to do so. Additionally, the endorsers were all interested in the loan, one appellant being the seller of the equipment and lessor of the building in which it was to be located, the others being officers and directors of the business using the equipment. With this close attachment to

the business, it seems inconceivable that they did not insist upon filing. There is, also, the added factor that the bankruptcy was a voluntary one indicating that the endorsers had knowledge of the financial situation of the maker. We perceive no unjustifiable impairment of the collateral. We are of the opinion that the court did not commit error when it adjudged that the "non-filing did not discharge the endorsers and they remained bound to the plaintiff pursuant to their endorsements."

[4]   The second exception is preserved, assigned as error, and argued only by appellant Powell. Stipulation No. 7 in the stipulations dated 20 July 1973 and stipulation No. 11 in the stipulations dated 27 December 1973 are set out in the facts above. Although not the subject of a stipulation, the note did contain a provision for payment of reasonable attorneys' fees. Appellant Powell assigns as error the court's conclusion that "the letter mailed by plaintiff's attorney to defendants' attorneys on June 11, 1973, was sufficient compliance with G.S. 6.21.2(5) and gave the defendants an opportunity to pay the balance of the note without incurring the additional expenses of paying reasonable attorneys' fees, and therefore entitles plaintiff to recover such attorneys' fees in this action."

G.S. 6-21.2 contains provisions with respect to the payment of attorneys' fees if the note is collected by or through attorneys after maturity. The provision pertinent here is G.S. 6-21.2(5) which is: "The holder of . . . a note and chattel mortgage or other security agreement . . . which evidences both a monetary obligation and a security interest in or a lease of specific goods, or his attorney at law, shall *after maturity of the obligation by default or otherwise,* notify the maker, debtor, account debtor, endorser or party sought to be held on said obligation that the provisions relative to payment of attorneys' fees in addition to the 'outstanding balance' shall be enforced and that such maker, debtor, account debtor, endorser or party sought to be held on said obligation has five days from the mailing of such notice to pay the 'outstanding balance' without the attorneys' fees. If such party shall pay the 'outstanding balance' in full before the expiration of such time, then the obligation to pay the attorneys' fees shall be void, and no court shall enforce such provisions.

"Notwithstanding the foregoing, however, if debtor has defaulted or violated the terms of the security agreement and has refused, on demand, to surrender possession of the collateral

to the secured party as authorized by § 25-9-503, with the result that said secured party is required to institute an ancillary claim and delivery proceeding to secure possession of said collateral; no such written notice shall be required before enforcement of the provisions relative to payment of attorneys' fees in addition to the 'outstanding balance.' " (Emphasis added.)

The statute sets no time limit. In *Binnings, Inc. v. Construction Co.*, 9 N.C. App. 569, 177 S.E. 2d 897 (1970), the facts were these: The note was executed on 20 January 1970, due and payable 30 January 1970 and contained a provision for collection of reasonable attorneys' fees. Action for collection of the note was begun on 4 March 1970, and plaintiff asked for principal, interest, costs and reasonable attorneys' fees. Defendants answered on 2 April 1970 and averred that plaintiff had not given the notice required by G.S. 6-21.2(5) that he intended to enforce the provisions of the note with respect to collection of attorneys' fees. On 2 April 1970, counsel for plaintiff mailed to defendants notice of their intention to enforce the provision. The matter was tried in June 1970, and from judgment awarding attorneys' fees, defendants appealed. This Court held that the notice was in time, since "The only requirement of the statute as to when notice is to be given is that it be given . . . 'after maturity of the obligation by default or otherwise . . . ' " *Id.* at 572. Here notice was given 11 June 1973, and judgment was not entered until 28 December 1973. It is obvious that defendants had ample time within which to pay the note without incurring additional cost of attorneys' fees. This is particularly true here where the court had advised defendants of its intention to render judgment as it did. Still defendants did not make any effort to pay. We are of the opinion that the action of the court in awarding attorneys' fees did not constitute reversible error.

Affirmed.

Judges HEDRICK and BALEY concur.