FIRST-CITIZENS BANK AND TRUST COMPANY v. ADOLFAS' AKELAITIS

No. 7410SC984

(Filed 7 May 1975)

**Guaranty — action against guarantor — striking of defenses**

In a bank's action against the guarantor of a loan made by the bank, the trial court erred in striking defendant guarantor's defenses (1) that the bank acted fraudulently in that it knew or had reason to know that defendant was being misled 'or was induced to enter into the guaranty agreement in ignorance of facts materially increasing his risk and failed to inform him of such facts, (2) that the loan was in truth a cash settlement of prior lawsuits by the principal debtors against the bank and that plaintiff never expected to be repaid any part of the loan except that amount guaranteed by defendant, and (3) that the guaranty agreement was not supported by consideration since the loan was a settlement of prior lawsuits; however, the trial court properly struck defendant's defenses (1) that unsound banking practices in making the loan bar plaintiff's action, (2) that the loan

violated federal and state statutes and was contrary to public policy, and (3) that plaintiff failed to take timely action against the principal debtors.

Judge VAUGHN dissents.

APPEAL by defendant from *Bailey, Judge.* Orders entered 21 August 1974 in Superior Court, WAKE County. Heard in the Court of Appeals on 11 February 1975.

Plaintiff instituted this action to recover the sum of $50,000 plus interest pursuant to a guaranty agreement executed by defendant.

In summary the complaint alleges: The plaintiff is a corporation organized under the laws of this State with a principal office in Wake County, North Carolina. Defendant is a citizen and resident of the State of New Jersey. On or about 26 April 1973, defendant executed a written guaranty agreement whereby the defendant guaranteed payment of $50,000.00 of a promissory note in the amount of $175,000.00 and dated 26 April 1973. The promissory note was executed by the Oaks Management Company by W. David Temel, its president, and W. David Temel and Cornelia A. Temel, individually. The makers of the note have defaulted in payment. On or about 7 December 1973 plaintiff made written demand, through its counsel, for payment under the guaranty agreement, and defendant refused same.

Defendant's answer raises the following defenses. He admits executing the purported guaranty agreement and further admits upon information and belief that the promissory note is in default and that plaintiff's written demand for payment was refused. However, he denies owing $50,000.00 for the reason that his signature on the guaranty agreement was procured by fraud and collusion on the part of plaintiff bank and one or more of its agents with W. David Temel. In his second defense the following allegations are made. On or about 6 October 1972, plaintiff imposed a "collected basis" limitation on certain checking accounts of W. David Temel and Temel-Peck Enterprises Co., because plaintiff bank thought Temel was depositing items into the accounts which were not supported by funds and then writing checks on the accounts. Thereafter, on 8 December 1972, W. David Temel and Temel-Peck Enterprises Co. sued the plaintiff bank and one of its vice-presidents for $30 million, alleging damage to reputation and credit. On 24 April 1973 the $30 million lawsuits were dismissed by consent of counsel. Prior

thereto, negotiations had taken place among plaintiff bank, the bank's senior vice-president E. P. Bodenheimer, Temel, and one Jack Brown in connection with the application for a loan of $175,000 from the bank to a corporation owned by Temel and Jack Brown and known as Oaks Management Company. As part of the loan the bank demanded various security, including the guaranty of defendant Akelaitis. The $175,000.00 loan, which underlies the present action, was made to Oaks Management Company only two days after the $30 million lawsuits were dismissed. Believing that he was to guarantee a bona fide loan arising out of a legitimate business transaction and that Temel and Oaks Management Company were in sound financial condition, and acting without knowledge of the prior $30 million lawsuits and the negotiations leading to the $175,000.00 loan, defendant Akelaitis executed a guaranty agreement covering part of the loan. Defendant alleges that plaintiff bank had a duty to disclose such facts as were material to the risk assumed by defendant and that, failing in this duty, plaintiff fraudulently conspired with Temel to induce defendant to execute a guaranty on the loan. Consequently, plaintiff is barred from enforcing the guaranty agreement.

Defendant's third defense alleges that the loan was in truth a cash settlement of the prior lawsuits against plaintiff bank and that plaintiff never expected or intended to be repaid any part of the loan except that $50,000 portion which defendant guaranteed. This, alleges defendant, also constitutes a bar to the present action.

Defendant, by his fourth defense, alleges that unsound banking practices in making the loan bar plaintiff's action.

As a fifth defense, he alleges that the loan was a misappropriation of funds in violation of certain federal and state statutes so that enforcement of defendant's guaranty is contrary to public policy.

Since he alleges that the loan was actually a cash settlement of prior lawsuits against plaintiff, defendant, through his sixth defense, claims that his guaranty agreement is unenforceable due to a lack of consideration.

The seventh and final defense alleges that the note was in default after 1 August 1973, and on or about 17 November 1973, W. David Temel and Cornelia A. Temel, makers on the note,

disappeared. By failing to take timely action against the Temels and to protect its other security, defendant alleges that plaintiff bank has caused defendant's rights as guarantor to be destroyed so that defendant is entitled to be exonerated from his obligation as guarantor.

In addition to the foregoing defenses, defendant counterclaimed, alleging that the fraudulent conduct of plaintiff caused defendant to be damaged in the amount of $50,000.00 plus attorney fees.

The trial court allowed plaintiff's motion to strike defendant's second, third, fourth, fifth, sixth, and seventh defenses and further allowed plaintiff's motion to dismiss defendant's counterclaim for failure to state a claim upon which relief can be granted. In addition, the trial court denied defendant's motion to join F. P. Bodenheimer as a third-party defendant. From these orders defendant appealed.

*Jordan, Morris and Hoke, by Charles B. Morris, Jr., for plaintiff appellee.*

*Hall and Scales, by Archibald H. Scales III, for defendant appellant.*

MARTIN, Judge.

Under Rule 12(f), Rules of Civil Procedure, the trial court may order stricken from any pleading any insufficient defense or any redundant, irrelevant, immaterial, impertinent, or scandalous matter. "As the motion to dismiss under 12(b)(6) is the device to test the fundamental sufficiency of a complaint, so the motion to strike under Rule 12(f) is the device to test the legal sufficiency of an affirmative defense." 1 McIntosh, N. C. Practice and Procedure, § 970.65 (Phillips Supp. 1970). The trial court has ordered stricken from the answer defendant's second through his seventh defenses. In our opinion, and we so hold, the trial court's order striking defendant's second, third, and sixth defenses was improper. We affirm the trial court with regard to the fourth, fifth, and seventh defenses.

The absence of an allegation that plaintiff made any misrepresentations to defendant was not fatal to the second and third defenses. Where there is a duty to speak, fraud can be practiced by silence as well as by a positive misrepresentation. *Setzer v. Insurance Co.*, 257 N.C. 396, 126 S.E. 2d 135 (1962).

Clearly, defendant sought to plead fraud based upon the silence of the bank. Furthermore, we cannot say at this stage of the case whether plaintiff bank had a duty to make disclosures to defendant. Plaintiff's reliance on *Sparks v. Trust Co.*, 256 N.C. 478, 124 S.E. 2d 365 (1962), is misplaced. Here, defendant was not simply a member of the general public in need of information concerning a customer of the bank. Defendant was a guarantor of payment of a loan made by the bank.

"If the creditor 'knows, or has good grounds for believing that the surety is being deceived or misled, or that he was induced to enter into the contract in ignorance of facts materially increasing the risks, of which he has knowledge, and he has an opportunity, before accepting his undertaking, to inform him of such facts, good and fair dealing demand that he should make such disclosure to him; and if he accepts the contract without doing so, the surety may afterwards avoid it.' " 10 Williston, Contracts, § 1249 (3d ed. 1967). In *Construction Co. v. Crain and Denbo, Inc.*, 256 N.C. 110, 123 S.E. 2d 590 (1962), the Court, quoting from an earlier edition of Williston's treatise, states, " 'A surety is in general a friend of the principal debtor, acting at his request, and not at that of the creditor; and, in ordinary cases, it may be assumed that the surety obtains from the principal all of the information which he requires.' This is the rule applicable unless there is some fact, which the creditor knows the surety probably will not discover, of such vital importance to the risk that the creditor must have been aware that the non-disclosure would in effect amount to a contrary representation to the surety."

While recognizing that a distinction is often made between a contract of guaranty and a contract of suretyship, we find no reason to draw such a distinction under the present circumstances. Hence, the foregoing rules are applicable.

In the present case it appears that the trial judge prematurely decided the question of plaintiff's duty to disclose. Defendant has been precluded from discovering whether the bank knew or had reason to know that defendant was being misled or that he was induced to enter into the contract in ignorance of facts materially increasing his risk of which the bank had an opportunity to inform him.

Defendant's sixth defense was also improperly stricken from the pleadings. Even though defendant characterized the trans-

action as a cash settlement, in contrast to other averments in which he called it a loan, this was not fatal. A party may state as many defenses as he has regardless of consistency. G.S. 1A-1, Rule 8(e)(2).

Defendant's fourth, fifth, and seventh defenses were properly stricken as legally insufficient. With regard to the seventh defense, it is necessary to point out that under the terms of the guaranty agreement defendant's liability was direct and not conditional upon the pursuit of any remedies against any other person or security.

From what has been said with regard to the second and third defenses, it follows that the court should not have dismissed defendant's counterclaim for fraud. Furthermore, defendant should have been allowed leave to serve a summons and complaint upon F. P. Bodenheimer as third-party defendant.

Reversed in part.

Affirmed in part.

Judge ARNOLD concurs.

Judge VAUGHN dissents and would affirm the orders.