DAVID NEAL WHISNANT AND LOIS MILLER WHISNANT, PLAINTIFFS v. CAROLINA
FARM CREDIT, ACA, DEFENDANT

No. COA09-180

(Filed 18 May 2010)

**Sureties— accommodation makers—summary judgment—genuine issue of material fact—fraud—negligence—unfair trade practices**

The trial court erred in a case arising out of loan defaults by granting summary judgment in favor of defendant bank on all claims including fraud in the inducement, actual fraud, negligence, and unfair trade practices. The record raised a genuine issue of material fact as to whether plaintiffs were induced to enter into a contract to help their extended family receive financing for a greenhouse in which plaintiffs had no ownership interest or financial benefit, in ignorance of facts materially increasing the risk of which defendant had knowledge, and defendant had an opportunity before accepting plaintiffs' undertaking to inform plaintiffs of such facts. Further, there was a genuine issue of material fact as to whether plaintiffs were accommodation makers.

Appeal by plaintiffs from order entered 21 August 2008 by Judge Forrest D. Bridges in Superior Court, Cleveland County. Heard in the Court of Appeals 2 September 2009.

*Katten Muchin Rosenman LLP, by William L. Sitton, Jr., for plaintiffs-appellants.*

*Bell, Davis & Pitt, P.A., by Michael D. Phillips, for defendant-appellee.*

STROUD, Judge.

Plaintiffs appeal the trial court's order granting summary judgment on all of their claims. For the following reasons, we reverse the trial court order granting summary judgment on all claims and remand for further proceedings.

## I. Background

Plaintiffs alleged that defendant loaned money to James and Elaine Wilson ("the Wilsons") for their greenhouse project. Plaintiffs

had an extensive business relationship with defendant outside of the context of the greenhouse project. Plaintiffs allege that they relied on representations made by defendant and agreed to co-sign the Wilsons' loan documents because of the defendant's representations. At least one of the loans was secured by plaintiffs' farm, which includes their personal residence. The Wilsons were unable to repay their loans and defendant attempted to collect the balance from plaintiffs, including an action to foreclose their farm. On 17 July 2007, plaintiffs filed a verified complaint with causes of action for fraud in the inducement, actual fraud, and negligence. Plaintiffs also requested injunctive relief to prohibit the foreclosure of their property. The history of the loans is quite complex and was summarized by the trial court in its preliminary injunction order as follows:

1. Plaintiffs are husband and wife, residents of Cleveland County and are owners of a residence and farm property located on Jackson White Road, Lawndale, North Carolina (the "Farm Property") consisting of approximately fifty-one (51) acres.

2. Defendant Carolina Farm Credit, ACA ("CFC") is a lending institution and is a member institution of the Farm Credit System, with its principal place of business in Statesville, North Carolina.

3. By letter dated June 19, 2007, Defendant notified Plaintiffs that it intended to initiate foreclosure proceedings to sell the Farm Property to satisfy certain indebtedness as hereinafter described pursuant to a Deed of Trust recorded in Book 1419 at Page 289 in the Cleveland County Registry, dated June 29, 2004.

4. Since 1998, the Plaintiffs have borrowed money for their own use through a series of loans from the Defendant, for which loans Plaintiffs have provided as security certain deeds of trust against the Farm Property described above. These deeds of trust are dated April 3, 1998, recorded in Book 1219 at Page 609; November 22, 2002, recorded in Book 1351 at Page 2309, of the Cleveland County Registry, respectively. The present balance of such loans owed by the Plaintiffs to the Defendant as of the date of this hearing was $115,375.68, together with interest accumulating thereon at the rate of $23.7783 per day.

5. James and Elaine Wilson ("Wilsons" or "Debtors") were the owners and operators of the South Mountain Greenhouse (the "Nursery"). The Wilsons are the sister and brother-in-law of the Plaintiff, David Whisnant.

6. Between December 7, 2001 and July 29, 2005, the Plaintiffs, together with the Wilsons, signed a series of promissory notes to obtain financing for the South Mountain Greenhouse. Some of the later notes in the series were executed for purposes of consolidating, modifying and refinancing earlier notes made by the makers. These loans were made for the operation of the South Mountain Greenhouse by the Wilsons.

7. The loans described in paragraph 6 above were secured by a Deed of Trust on the Farm Property dated June 29, 2004 and recorded in Book 1419 at Page 289 of the Cleveland County Registry. Defendant also asserts that, pursuant to a Future Advances clause in the 1998 and the 2002 Deeds of Trust, these loans also are secured by the first and second priority deeds of trust against the Farm Property, though the Plaintiffs dispute this contention.

8. The Plaintiffs and Defendant disagree as to the role of the Plaintiffs in the transactions described above: the Plaintiffs refer to themselves as "accommodation makers" while the Defendant refers to the Plaintiffs as "co-makers." This court does not consider it necessary to determine the exact status of the Plaintiffs in these transactions at this stage of the proceedings, but does note that, according to the evidence presented to date, the Plaintiffs did not receive any of the proceeds of the loans made for the operation of the South Mountain Greenhouse.

9. The total indebtedness presently owed arising out of the series of notes described in paragraph 6 above, as of the date of this hearing, was $122,628.66, together with interest thereon from August 20, 2007, at the rate of $30.8556 per day. There presently exists a default under the terms of payment under the applicable promissory notes for the said indebtedness.

10. Defendant has been unable to collect any payments on the said indebtedness from the Wilsons due to the filing of a Chapter 13 Bankruptcy Petition on September 9, 2005 by the Wilsons. Defendant has obtained relief from the bankruptcy stay to proceed against collateral, consisting both of the Farm Property and a security interest in certain greenhouse equipment. The parties disagree on the present status of liens against the greenhouse property.

On 19 September 2007, defendant answered plaintiff's complaint alleging various affirmative defenses and requesting plaintiffs' action

**WHISNANT v. CAROLINA FARM CREDIT, ACA**

[204 N.C. App. 84 (2010)]

be dismissed. On 19 November 2007, the trial court issued a conditional preliminary injunction staying the foreclosure of the plaintiffs' farm. On 8 January 2008, plaintiffs filed a "motion for order to show cause[,]" (original in all caps), for defendant's alleged violation of the preliminary injunction order; on this same date the trial court issued a show cause order and a notice of hearing. On 14 January 2008, defendant filed a motion to dismiss the show cause order, which was subsequently granted because defendant filed a voluntary dismissal of the foreclosure action.

On 29 February 2008, plaintiffs filed a motion to amend their complaint which was later allowed. Plaintiffs' amended complaint added a claim for unfair and deceptive trade practices. On 13 May 2008, plaintiffs filed a motion to extend the preliminary injunction order to prohibit defendant "from noticing or filing any claim of foreclosure[.]" On or about 27 June 2008, defendant filed a motion for summary judgment. On 21 August 2008, the trial court denied plaintiff's motion to extend the preliminary injunction order and granted summary judgment in favor of defendant. On 15 September 2008, plaintiffs filed a notice of appeal.

## II. Standard of Review

We are reviewing the trial court's order granting summary judgment in favor of defendant as to all of plaintiffs' claims.

> [T]he standard of review is whether there is any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law. Summary judgment is appropriate when viewed in the light most favorable to the non-movant, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.

*S.B. Simmons Landscaping v. Boggs,* —— N.C. App. ——, ——, 665 S.E.2d 147, 152 (2008) (citations and quotation marks omitted) (citing N.C. Gen. Stat. § 1A-1, Rule 56(c)).

## III. Summary Judgment

Plaintiffs contend that the trial court erred in granting summary judgment in favor of defendant regarding plaintiffs' claims for negligence, fraud in the inducement, actual fraud, and unfair and deceptive trade practices. Plaintiffs also contend that by signing the notes, they were accommodation makers.

A.  Application of Suretyship Law

In order to determine "whether there is any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law[,]" we must first know what law to apply. *S.B. Simmons Landscaping* at ——, 665 S.E.2d 147, 152. Plaintiffs' brief cites to *Trust Co. v. Akelaitis*, 25 N.C. App. 522, 525, 214 S.E.2d 281, 284 (1975) and *Gant v. NCNB*, 94 N.C. App. 198, 200, 379 S.E.2d 865, 867, *review dismissed*, 388 S.E.2d 453 (N.C. 1989), which are both cases regarding suretyship law. However, defendant contends that suretyship law is not applicable.

Defendant attempts to distinguish this case from *Akelaitis* and *Gant* on several grounds. First, defendant argues that both *Akelaitis* and *Gant* involved "motions to dismiss, rather than motions for summary judgment. Thus, these opinions set forth limited rules for pleading claims under suretyship law without the benefit of a developed record of evidence." However, the rule of law is the same whether we are dealing with a motion to dismiss or a motion for summary judgment; this is demonstrated by *Constr. Co. v. Crain and Denbo, Inc.*, a case which proceeded to a bench trial and where certainly there was "a developed record of evidence." 256 N.C. 110, 114, 123 S.E.2d 590, 593 (1962). In *Crain and Denbo*, this Court articulated that

[i]f the creditor knows or has good grounds for believing that the surety is being deceived or misled, or that he was induced to enter into the contract in ignorance of facts materially increasing the risk, of which he has knowledge, and he has an opportunity before accepting his undertaking, to inform him of such facts, good and fair dealing demand that he should make such disclosure to him; and if he accepts the contract without doing so, the surety may afterwards avoid it. It was at one time asserted that all the information in obligee's power must be given to enable the promisor to estimate the character of the risk he is invited to undertake. This view, however, finds no support today. A surety is in general a friend of the principal debtor, acting at his request, and not at that of the creditor; and, in ordinary cases, it may be assumed that the surety obtains from the principal all of the information which he requires. This is the rule applicable unless there is some fact, which the creditor knows the surety probably will not discover, of such vital importance to the risk that the creditor must have been aware that the non-disclosure would in effect amount to a contrary representation to the surety. The conceal-

ment must in fact or in law be fraudulent. There is nothing in the mere nature of the contract of suretyship itself which requires the obligee to disclose to the proposed surety all the material facts affecting the risk. There must be a duty on the part of the obligee to make the disclosure.

*Id.* at 120-21, 123 S.E.2d at 598 (citations, quotation marks, and ellipses omitted). Thus, the fact that we are addressing a motion for summary judgment instead of a motion to dismiss does not change the applicable law. The question we must consider as to summary judgment is whether, "when viewed in the light most favorable to the [plaintiffs], the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is [a] genuine issue as to any material fact[,]" *S.B. Simmons Landscaping* at ——, 665 S.E.2d at 152, specifically whether defendant knew or had

good grounds for believing that the . . . [plaintiffs were] being deceived or misled, or that [they were] induced to enter into the contract in ignorance of facts materially increasing the risks, of which [defendant ha[d] knowledge, and [defendant] ha[d] an opportunity, before accepting [plaintiffs'] undertaking, to inform [them] of such facts.

*Gant* at 199-200, 379 S.E.2d at 867.

Defendant next contends that *Akelaitis* and *Gant* are distinguishable because though plaintiffs claim to be accommodation makers "the present case does not involve guarantors or sureties who were third parties to the primary loan obligations. Rather, under the plain terms of the promissory notes, [p]laintiffs were co-borrowers with the Wilsons and co-makers of the notes."

N.C. Gen. Stat. § 25-3-419 provides that

(a) If an instrument is issued for value given for the benefit of a party to the instrument, the "accommodated party", and another party to the instrument, the "accommodation party", signs the instrument for the purpose of incurring liability on the instrument without being a direct beneficiary of the value given for the instrument, the instrument is signed by the accommodation party "for accommodation".

(b) An accommodation party may sign the instrument as maker, drawer, acceptor, or indorser and, subject to subsec-

tion (d) of this section, is obliged to pay the instrument in the capacity in which the accommodation party signs. The obligation of an accommodation party may be enforced notwithstanding any statute of frauds and whether or not the accommodation party receives consideration for the accommodation.

N.C. Gen. Stat. § 25-3-419(a)-(b) (2007). Also, "[w]hether a person is an accommodation party is a question of fact." N.C. Gen. Stat. § 25-3-419, Official Comment 3.

The evidence when "viewed in the light most favorable to" plaintiffs, *see S.B. Simmons Landscaping* at ——, 665 S.E.2d at 152, forecasts that plaintiffs signed the 29 July 2005 promissory note and therefore incurred liability. Furthermore, plaintiffs signed the note in order for their extended family to receive financing for a greenhouse in which plaintiffs had no ownership interest and from which plaintiff would receive no financial benefit; plaintiffs were also not recipients of the loan proceeds. Thus, the evidence forecasts that plaintiffs "sign[ed] the instrument for the purpose of incurring liability on the instrument without being a direct beneficiary of the value given for the instrument" and therefore plaintiffs would have signed "for accommodation." N.C. Gen. Stat. § 25-3-419(a). Though defendant is correct in noting that "[a]n accommodation party may sign the instrument as maker, drawer, acceptor, or indorser[,]" it must be further noted that

> "[a]ny party to a negotiable instrument may be a surety if he signs for the accommodation of another party." Restatement of Security § 82 cmt. k (1941 & Supp. 1991-92); *see also First Citizens Bank & Trust Co. v. Larson,* 22 N.C. App. 371, 376, 206 S.E.2d 775, 779, *cert. denied,* 286 N.C. 214, 209 S.E.2d 315 (1974) ("an accommodation party is always a surety"). This would also include makers and co-makers who sign for accommodation purposes.

*Branch Banking and Trust Co. v. Thompson,* 107 N.C. App. 53, 57 n.1, 418 S.E.2d 694, 697 n.1 (citation omitted), *disc. review denied,* 332 N.C. 482, 421 S.E.2d 350 (1992); *see also* N.C. Gen. Stat. § 25-3-419, Official Comment 1 ("An accommodation party is a person who signs an instrument to benefit the accommodated party either by signing at the time value is obtained by the accommodated party or later, and who is not a direct beneficiary of the value obtained. An accommodation party will usually be a co-maker or anomalous indorser."). As

the evidence "viewed in the light most favorable to" plaintiffs, *see S.B. Simmons Landscaping* at ——, 665 S.E.2d at 152, forecasts they are accommodation parties and thus sureties, *see Thompson* at 57 n.1, 418 S.E.2d at 697 n.1, suretyship law would apply and defendant's attempt to distinguish *Akelaitis* and *Gant* fails. As we have concluded that all of defendant's arguments regarding *Akelaitis* and *Gant* fail, we now consider whether there were "genuine issue[s] of material fact" in light of suretyship law. *See S.B. Simmons Landscaping* at ——, 665 S.E.2d at 152.

B. Genuine Issues of Material Fact

Plaintiffs argue that all of their claims were erroneously dismissed. Defendant claims summary judgment was properly granted because "[p]laintiffs did not come forward with any evidence that [defendant] concealed or misrepresented material information regarding the financial condition of the Wilsons and South Mountain Greenhouse and because, as a matter of law, [defendant] did not owe [p]laintiffs a duty to disclose or warrant such information." Defendant contends that "the record is nevertheless void of any evidence showing that [defendant] concealed from [p]laintiffs any material information regarding the Wilsons and South Mountain Greenhouse."

In regard to defendant's contentions, we first note that plaintiffs need not allege defendants made an affirmative misrepresentation to them as "[w]here there is a duty to speak, fraud can be practiced by silence as well as by a positive misrepresentation." *Akelaitis* at 525, 214 S.E.2d at 284 (citation omitted). Furthermore, defendant may also have owed a duty to disclose to plaintiff its knowledge regarding the Wilsons' and the greenhouse's financial state. *See Gant* at 200, 379 S.E.2d at 867; *Akelaitis* at 526, 214 S.E.2d at 284 ("If the creditor knows, or has good grounds for believing that the surety is being deceived or misled, or that he was induced to enter into the contract in ignorance of facts materially increasing the risks, of which he has knowledge, and he has an opportunity, before accepting his undertaking, to inform him of such facts, good and fair dealing demand that he should make such disclosure to him; and if he accepts the contract without doing so, the surety may afterwards avoid it." (citations and quotation marks omitted)).

In *Gant*, the "[p]laintiff . . . alleged the defendant knew that she was unaware of the financial condition of the principal debtor and knew she was relying on defendant's good faith and financial exper-

tise in making the loans." *Gant* at 200, 379 S.E.2d at 867 (quotation marks omitted). This Court noted that

> [t]he crux of plaintiff's complaint is that defendant failed to fulfill its obligation to inform her of the financial condition of the company whose loans she guaranteed. Although there is no fiduciary relationship between creditor and guarantor, *in some instances a creditor owes a duty to the guarantor to disclose information about the principal debtor.*

> · If the creditor knows, or has good grounds for believing that the surety or guarantor is being deceived or misled, or that he is induced to enter into the contract in ignorance of facts materially increasing the risks, of which he has knowledge, and he has an opportunity, before accepting his undertaking, to inform him of such facts, good and fair dealing demand that he should make such disclosure to him; and if he accepts the contract without doing so, the surety or guarantor may afterwards avoid it.

94 N.C. App. at 199-200, 379 S.E.2d at 867 (emphasis added) (citations and brackets omitted). Although this Court has noted that "[i]t is unclear whether a breach of this duty to disclose is more properly labeled a breach of the covenant of good faith and fair dealing or a claim for negligent nondisclosure[,]" *see First Union Nat. Bank v. Brown*, 166 N.C. App. 519, 532, 603 S.E.2d 808, 818 (2004), we have recognized that an accommodation party may have a claim on this basis. See *Gant* at 200, 379 S.E.2d at 867. Thus, we disagree with defendant's contentions and now consider whether there were genuine issues of material fact.

Summary judgment should not have been granted because the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there [are] . . . genuine issue[s of] . . . material fact." N.C. Gen. Stat. § 1A-1, Rule 56(c). Plaintiff alleged defendant made material misrepresentations and Fred Miller, "a commercial lender and real estate specialist in major financial institutions around the country[,]" filed an affidavit stating that "CFC may have misrepresented its position regarding the Wilsons' collateral to the Whisnants." Mr. Miller further averred that

> [f]rom November 22, 2002 through June 2005, the only basis for entering into these loan agreements was the security interest that CFC had obtained in the Whisnants' farm property. Sound loan

WHISNANT v. CAROLINA FARM CREDIT, ACA

[204 N.C. App. 84 (2010)]

practices required that CFC inform the Whisnants in December 2001 and thereafter that there was no reasonable basis upon which to loan these monies to the Wilsons other than the equity provided by the Whisnants' real estate. If, as the Whisnants contend in their Verified Complaint, they repeatedly questioned CFC regarding the ability of the Wilsons to repay such monies as were actually disbursed by CFC to their account(s), sound loan practices would require that CFC disclose to the Whisnants, in writing, that there was no reason or evidence to believe that the Wilsons could possibly repay the principal amount of these loans.

In addition, David Whisnant testified during his deposition that he had worked with Carolina Farm Credit, and specifically Kathy Carroll, since 1984. Ms. Carroll had previously handled loans and deeds of trust for Mr. Whisnant, and he trusted her. Mr. Whisnant testified that it was Ms. Carroll who informed him a co-signer would be needed and that he and his wife "were depending on [Ms. Carrol] to tell [them] what [they] needed to know, as far as accommodation makers on South Mountain Greenhouse." As plaintiffs were signing more notes, they began to "question the financial health of the South Mountain Greenhouse" and were informed by Ms. Carroll that "everything looks to be running okay[,]" so they continued signing loan documents.

We conclude that the record before us raises a "genuine issue of material fact[,]" *see S.B. Simmons Landscaping* at ——, 665 S.E.2d at 152, as to whether plaintiffs were "induced to enter into the contract in ignorance of facts materially increasing the risk, of which [defendant] ha[d] knowledge, and [defendant] ha[d] an opportunity before accepting [plaintiffs'] undertaking, to inform [plaintiffs] of such facts[.]" *Crain and Denbo* at 120, 123 S.E.2d at 598. We recognize that defendant contends it neither misrepresented nor concealed material information; however, for purposes of summary judgment we must view the evidence forecast in the light most favorable to plaintiffs, and thus a genuine issue of material fact does exist. *See S.B. Simmons Landscaping* at ——, 665 S.E.2d at 152.

1. Negligence

Negligence is the breach of a legal duty owed by defendant that proximately causes injury to plaintiff. In order to establish actionable negligence, a plaintiff must show that: (1) defendant failed to exercise due care in the performance of some legal duty

owed to plaintiff under the circumstances; and (2) the negligent breach of such duty was the proximate cause of the injury. A duty is defined as an obligation, recognized by the law, requiring the person to conform to a certain standard of conduct, for the protection of others against unreasonable risks.

*Guthrie v. Conroy*, 152 N.C. App. 15, 25, 567 S.E.2d 403, 410-11 (2002) (citations, quotation marks, and brackets omitted).

In *Gant*,

[p]laintiff ha[d] alleged the defendant knew that she was unaware of the financial condition of the principal debtor and knew that she was relying on defendant's good faith and financial expertise in making the loans. Further, plaintiff alleged the defendant at all times knew or had sufficient information to know the principal debtor was insolvent. Plaintiff has alleged sufficient facts to state a claim against defendant, whether the cause of action is ultimately determined to be one for negligence or breach of duty of good faith, as plaintiff has labeled her claims.

*Gant* at 200, 379 S.E.2d at 867 (quotation marks omitted).

Here, the evidence "viewed in the light most favorable to" plaintiffs raises a "genuine issue of material fact[,]" *S.B. Simmons Landscaping* at ——, 665 S.E.2d at 152, as to whether defendants negligently breached a duty of disclosure to plaintiffs, *see Gant* at 200, 379 S.E.2d at 867, which resulted in plaintiffs being "induced to enter into the contract in ignorance of facts materially increasing the risk, of which [defendant] ha[d] knowledge, and [defendant] ha[d] an opportunity before accepting [plaintiffs'] undertaking, to inform [plaintiffs] of such facts[.]" *Crain and Denbo* at 120, 123 S.E.2d at 598; *see Guthrie* at 25, 567 S.E.2d at 410-11. Accordingly, the trial court improperly granted summary judgment as to plaintiff's claim for negligence.

2. Actual Fraud

The essential elements of fraud are: (1) False representation or concealment of a past or existing material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party, *A claim for fraud may be based on an affirmative misrepresentation of a material fact, or a failure to disclose a material fact relating to a transaction which the parties had a duty to disclose.*

*Hardin v. KCS Intern., Inc.,* —— N.C. App. ——, ——, 682 S.E.2d 726, 733 (2009) (emphasis added) (citations, quotation marks, and brackets omitted). Plaintiff's evidence shows that defendants may have misrepresented or concealed information regarding the financial state of the greenhouse project, in order to induce plaintiffs to co-sign the loan documents. Plaintiffs did co-sign the notes and are at risk of losing their farm and home because of the Wilsons' default. As plaintiffs have demonstrated genuine issues of material fact regarding fraud, the trial court erred in granting summary judgment on plaintiffs' claim for actual fraud. *See id.*; *see also Gant* at 200, 379 S.E.2d at 867.

3. Fraud in the Inducement

"The essential elements of fraud in the inducement are: (1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Media Network v. Long Haymes Carr, Inc.,* —— N.C. App. ——, 678 S.E.2d 671, 684 (2009) (citation, quotation marks, and brackets omitted). In this instance, as the elements for fraud in the inducement and the forecast of evidence are the same as for actual fraud, we again conclude that the trial court improperly granted summary judgment.

4. Unfair and Deceptive Trade Practices

"Proof of fraud in the inducement necessarily constitutes a violation of Chapter 75 and shifts the burden of proof from the plaintiff to the defendant, which must then prove that it is exempt from Chapter 75's provisions." *Media Network* at ——, 678 S.E.2d at 684. As we have concluded that the trial court erred in granting summary judgment as to plaintiff's claim for fraud in the inducement, we also conclude that the trial court erred in granting it as to plaintiff's claim for unfair and deceptive trade practices as "[p]roof of fraud in the inducement necessarily constitutes a violation of Chapter 75[.]" *Id.*

C. Accommodation Party

Lastly, plaintiffs ask that we conclude they are accommodation makers; however, it is not the duty of this Court to find facts. *See In re J.Z.M.,* 191 N.C. App. 158, 162, 663 S.E.2d 435, 437 (2008) ("The trial court is the trier of fact[.]" (citation omitted)). As we noted above, there is a genuine issue of material fact as to whether plaintiffs are accommodation makers. The evidence as forecast by plaintiffs, if taken as true, demonstrates that they are accommodation makers;

LEE v. WINGET RD., LLC

[204 N.C. App. 96 (2010)]

however, we cannot make the factual determination necessary for us to conclude that plaintiffs are accommodation makers as a matter of law. *See id.*

## IV. Conclusion

As we conclude that there was a genuine issue of material fact as to each of plaintiffs' claims, we reverse the order granting summary judgment and remand for further proceedings.

REVERSED AND REMANDED.

Judges GEER and ERVIN concur.