Flanders/Precisionaire Corp. v. The Bank of NY Mellon Trust Co., 2015 NCBC 33.

STATE OF NORTH CAROLINA

JOHNSTON COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS 152

FLANDERS/PRECISIONAIRE
CORPORATION and FLANDERS
CORPORATION,

      Plaintiffs,

v.

THE BANK OF NEW YORK MELLON
TRUST COMPANY, NATIONAL
ASSOCIATION, as Trustee for
MORGAN STANLEY CAPITAL I INC.,
COMMERCIAL MORTGAGE PASS-
THROUGH CERTIFICATES, SERIES
2007-IQ14; WAL-PAT II, LLC; and
STEVEN K. CLARK,

      Defendants.

ORDER AND OPINION

{1}   **THIS MATTER** is before the Court upon Defendant The Bank of New York Mellon Trust Company, National Association's ("BONY") Motion to Dismiss Plaintiffs Flanders/Precisionaire Corporation ("Precisionaire") and Flanders Corporation's ("Flanders") (unless individually identified, collectively "Plaintiff") Third, Fourth, Twelfth and Thirteenth Claims ("BONY's Statute of Limitations Motion"); BONY's Motion to Dismiss Plaintiff's Twelfth and Thirteenth Claims ("BONY's Motion to Dismiss"); Defendant Steven Clark's ("Clark") Rule 12 Motion in Lieu of Answer ("Clark's Motion to Dismiss"); and Plaintiff's Motion to Dismiss BONY's Fourth Counterclaim ("Plaintiff's Motion to Dismiss") (collectively, the "Motions") in the above-captioned case. Having considered the Motions, the briefs and other documents filed in support of and in opposition to the Motions, and the arguments of counsel at the hearing held on December 11, 2014, the Court **DENIES** BONY's Statute of Limitations Motion; **GRANTS** BONY's Motion to Dismiss; **DENIES** Clark's Motion to Dismiss; and **GRANTS** Plaintiff's Motion to Dismiss.

*Ward and Smith, P.A. by E. Bradley Evans, Paul A. Fanning, and Michael J. Parrish for Plaintiffs Flanders/Precisionaire Corporation and Flanders Corporation.*

*Pearce Law PLLC by Bradley E. Pearce for Defendant the Bank of New York Mellon Trust Company, National Association.*

*Battle, Winslow, Scott & Wiley, P.A. by W. Dudley Whitley, III for Defendant Steven K. Clark.*

Bledsoe, Judge.

## I.

## PROCEDURAL HISTORY

{2}     Plaintiff commenced this action in Johnston County on January 16, 2014, alleging claims against Defendants in various combinations for breach of contract, conspiracy, tortious interference with contract, and fraudulent concealment; and seeking various declaratory judgments, an accounting, setoff, and contribution/indemnity arising from allegedly wrongful acts committed on behalf of Plaintiffs by several of their former officers.

{3}     Plaintiff also filed an identical action in Bladen County on January 13, 2014, because certain of the subject property in this action is located in Bladen County.

{4}     The cases were designated to the Business Court on February 4, 2014 and assigned to the Honorable John Jolly on February 6, 2014.  The cases were subsequently reassigned to the undersigned on October 27, 2014 following Judge Jolly's retirement.

{5}     Defendant Clark filed his Motion to Dismiss on May 7, 2014, seeking dismissal of Plaintiff's claim for fraudulent concealment.  Plaintiff filed its Motion to Dismiss BONY's counterclaim for unfair and deceptive trade practices ("UDTP") on June 6, 2014. Defendant BONY filed its Statute of Limitations Motion and its Motion to Dismiss on July 29, 2014.  The parties completed briefing on all of the Motions on September 2, 2014.

{6}     The cases were consolidated into one action on September 9, 2014.

{7} On November 20, 2014, by request and consent of the parties, the Court added IQ14 – Clarkton Smithfield NC LLC ("IQ14") as a party to this action as the successor-in-interest to BONY with respect to the rights and obligations arising under the loan and collateral security instruments and documents that form the basis of this litigation.

{8} The Court held a hearing on December 11, 2014, at which all remaining parties, except Defendant Wal-Pat II, LLC ("Wal-Pat II"), were represented by counsel.[1] The Motions are now ripe for resolution.

II.

FACTUAL BACKGROUND

{9} The Court does not make findings of fact on motions to dismiss pursuant to Rule 12(b)(6), but only recites those facts included in the Complaint that are relevant to the Court's determination of the Motions. *See, e.g., Concrete Serv. Corp. v. Investors Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986).

{10} Precisionaire is a North Carolina corporation with its principal place of business in Beaufort County, North Carolina. (Compl. ¶ 1.) Precisionaire is in the business of manufacturing and selling residential and commercial air filtration products. (Compl. ¶ 5.)

{11} Flanders is also a North Carolina corporation with its principal place of business in Beaufort County, North Carolina. (Compl. ¶ 3.) Precisionaire is a wholly-owned subsidiary of Flanders. (Compl. ¶ 4.)

{12} Defendant Clark was a shareholder of Flanders and formerly served as Flanders' Chief Financial Officer ("CFO") from 1995 through December 2004; Chief Operating Officer ("COO") from 1999 through December 2004; Chief Executive Officer ("CEO") from December 2004 through September 2007; and a member of Flanders' Board of Directors from 1995 through September 2007. (Compl. ¶¶ 31–35.)

---

[1] Wal-Pat II has not filed or joined in any of the Motions and did not appear at the hearing in this matter.

{13} Robert Amerson ("Amerson") "is the former [CFO], the former President, the former [CEO], a former member of the Board of Directors, the former Chairman of the Board of Directors, and formerly the largest stockholder of [Flanders]." (Compl. ¶ 22.)

{14} At all relevant times, Clark and Amerson were the sole members and managers of Wal-Pat, LLC ("Wal-Pat"). (Compl. ¶¶ 15, 37.)

{15} Defendant BONY is a national bank with its principal place of business in New York and serves as trustee for Morgan Stanley Capital, Inc., Commercial Pass-Through Certificates, Series 2007-IQ14 (the "Certificates"). (Compl. ¶¶ 6–7.)

{16} On December 1, 2000, Wal-Pat purchased approximately 33.226 acres of real property in Smithfield, North Carolina (the "Smithfield Property") for $3,500,000.00, financing the purchase through a loan from Bank of America effective that same date for the full purchase amount of $3,500,000.00. (Compl. ¶¶ 42–44.)

{17} On January 1, 2006, Wal-Pat and Precisionaire entered into a lease agreement for the Smithfield Property (the "Smithfield Lease"), whereby Precisionaire agreed to lease the Smithfield Property from Wal-Pat for a period of twenty years at the rate of $84,677.22 per month. (Compl. ¶¶ 64–70.) At the time of the execution of the Smithfield Lease, Defendant Clark was an owner and manager of Wal-Pat and the CEO and a director of Flanders. (Compl. ¶¶ 66, 68.)

{18} On June 14, 2006, Wal-Pat purchased real property in Clarkton, North Carolina (the "Clarkton Property") (collectively with the Smithfield Property, the "Properties") for $2,300,000.00, financing the purchase through a loan from Branch Banking & Trust Company, effective June 13, 2006, for the full purchase amount of $2,300,000.00. (Compl. ¶¶ 54–56.)

{19} On May 5, 2006, Wal-Pat and Precisionaire entered into a lease agreement for the Clarkton Property (the "Clarkton Lease") (collectively with the Smithfield Lease, the "Leases"), whereby Precisionaire agreed to lease the Clarkton Property from Wal-Pat for a period of twenty years at the rate of $49,321.40 per month. (Compl. ¶¶ 72–78.) Precisionaire also agreed to pay all property taxes, insurance,

and maintenance costs of the Clarkton Property during the life of the lease. (Compl. ¶ 79.) At the execution of the Clarkton Lease, Defendant Clark was an owner and manager of Wal-Pat and the CEO and a director of Flanders. (Compl. ¶¶ 66, 76.)

{20} The Leases were presented to Flanders' Board of Directors for approval before they were executed. (Compl. ¶ 83.) Plaintiff alleges that "any approval was made by directors who were beholden to and influenced by Amerson and Clark and such approval was made for the benefit of Amerson and Clark and not for the benefit of [Plaintiff]." (Compl. ¶ 83.)

{21} The Leases allegedly provided a 40% annual return on Wal-Pat's investment in the Smithfield Property and a 26% annual return on Wal-Pat's investment in the Clarkton Property. (Compl. ¶¶ 86, 90.) Plaintiff alleges that these returns on investment were "exorbitant" and "far in excess of what is customary for a commercial lease." (Compl. ¶¶ 86, 90.)

{22} On February 23, 2007, Wal-Pat conveyed the Smithfield and Clarkton properties to Wal-Pat II. (Compl. ¶ 94.) Wal-Pat is the sole member of Wal-Pat II. (Compl. ¶ 95.) That same day, Wal-Pat II obtained a loan for $11,500,000.00 (the "Loan") from LaSalle Bank National Association ("LaSalle Bank" or the "Original Lender") and executed a promissory note for that amount (the "Note"). (Compl. ¶¶ 96–97.) The Loan was secured by Assignments of Leases and Rents ("ALRs") and deeds of trust (the "Deeds of Trust") from Wal-Pat II to LaSalle Bank in connection with the Smithfield and Clarkton Properties. (Compl. ¶¶ 100, 103.)

{23} Under the terms of the Note, "unless Wal-Pat II, Amerson, or Clark committed an act of malfeasance in connection with the [L]oan, [LaSalle Bank] would be limited to recovering from [Plaintiff] under the Leases and enforcing its Deeds of Trust against the Properties," regardless of Amerson's and Clark's personal guarantees of the Loan. (Compl. ¶¶ 106–07.)

{24} Flanders executed guarantees of Precisionaire's obligations under the Leases in connection with the Loan from LaSalle Bank (the "Lease Guarantees"). (Compl. ¶¶ 133–35.) The Lease Guarantees may have been approved by Flanders'

Board of Directors; but, similar to the Board's approval of the Leases, Plaintiff alleges that "any such approval was made by directors who were beholden to and influenced by Amerson and Clark and such approval was made for the benefit of Amerson and Clark and not for the benefit of [Plaintiff]." (Compl. ¶ 139.)

{25} Precisionaire also executed two Subordination, Non-Disturbance and Attornment Agreements for each lease (the "SNDAs"). (Compl. ¶ 125.) Plaintiff alleges that the "terms of the SNDAs purport to subordinate certain rights of [Precisionaire] to the rights of [LaSalle Bank], and may purport to diminish certain other rights that [Precisionaire] had with regard to the Leases or the Properties." (Compl. ¶ 128.) Plaintiff contends that if the SNDAs were approved by Flanders' Board of Directors, the directors voting for approval were "beholden to and influenced by Clark and Amerson and such approval was made for the benefit of Amerson and Clark and not for the benefit of [Plaintiff]." (Compl. ¶ 132.)

{26} At the time the Loan was made and the supporting documents were executed, Clark was a manager and owner of Wal-Pat II and CEO, a director and a shareholder of Flanders, and Amerson was a manager and owner of Wal-Pat II and Chairman of Flanders' Board of Directors and Flanders' largest shareholder. (Compl. ¶¶ 119–20.)

{27} LaSalle Bank assigned the Note, ALRs, SNDAs, and other Loan documents to BONY on or about May 29, 2007. (Compl. ¶ 140.)

{28} On or about April 30, 2008, Wal-Pat II permitted Precisionaire to execute a sublease of the Clarkton Property to Superior Media, LLC ("Superior Media") (the "Clarkton Sublease"). (Compl. ¶¶ 145–47.) Under the Clarkton Sublease, Superior Media paid only $14,069.63 per month to Precisionaire, which Precisionaire in turn paid to Wal-Pat II in alleged satisfaction of Precisionaire's obligation under the Clarkton Lease. (Compl. ¶¶ 148–54.) Plaintiff alleges that Wal-Pat II accepted the reduced rent from Precisionaire without complaint or demand for additional rent for nearly 5 years. (Compl. ¶¶ 154–56.)

{29}  Amerson resigned all of his positions with Flanders as of April 2009. (Compl. ¶¶ 159–60.)  Clark resigned all of his positions with Flanders as of September 2007. (Compl. ¶ 161.)

{30}  Flanders reviewed the rental rate under the Smithfield Lease in early 2010 and hired "an experienced commercial lease broker and consultant, Douglas Faris ("Faris") of Binswanger," to assess the fair rental rate. (Compl. ¶¶ 162–64.) Faris opined that the Smithfield Lease rental rate was "nearly twice as much as he would expect" based on his review and analysis. (Compl. ¶ 165). Based on Faris's opinion, Flanders sent a letter to Wal-Pat II, stating that Precisionaire would "begin paying rent at the rate of $47,166.50 for the Smithfield Property from June of 2010 forward." (Compl. ¶¶ 165–69.) Precisionaire paid a monthly rental rate of $47,166.50 for the Smithfield Property from June 2010 until December 2010, after which Precisionaire increased the rent payment to $51,529.00 per month, which Precisionaire continued to pay thereafter. (Compl. ¶¶ 170–71.)

{31}  On April 18, 2011, Flanders and Wal-Pat II entered into a written agreement (the "Rate Letter Agreement") specifying that Precisionaire's monthly rental rate for the Clarkton Property was $14,491.71 and Precisionaire's monthly rental rate for the Smithfield Property was $51,529.00. (Compl. ¶ 177.)

{32}  On May 11, 2011, Precisionaire and Wal-Pat II entered into a Lease Termination Agreement, whereby Precisionaire agreed to pay $900,000.00 to Wal-Pat II in exchange for Wal-Pat II's agreements to terminate the Smithfield Lease within ten (10) days after the sale of Amerson's stock in Flanders and to enter into an amendment to the Smithfield Lease confirming the monthly rental rate of $51,529.00. (Compl. ¶¶ 178–81.)

{33}  On May 16, 2012, Amerson sold all of his stock in Flanders for an amount in excess of $20,000,000.00. (Compl. ¶ 183.) Plaintiff alleges that Wal-Pat II, however, did not terminate the Smithfield Lease or otherwise perform under the Lease Termination Agreement. Plaintiff alleges that Flanders made two formal demands on Wal-Pat II for performance under the Lease Termination Agreement,

but that Wal-Pat II "continued to refuse to honor its obligations" under the Agreement. (Compl. ¶¶ 184–87.)

{34} On the same day he sold his stock in Plaintiff, May 16, 2012, Amerson and his wife filed for bankruptcy, listing assets far in excess of liabilities. (Compl. ¶ 196.)

{35} Plaintiff alleges that Wal-Pat II defaulted under the terms of the Note no later than January 1, 2013, after which, on March 20, 2013, BONY sent a letter to Flanders (the "First Rent Demand Letter"), stating that Wal-Pat II had defaulted on the Loan and that BONY had the right to enforce the Leases against Flanders pursuant to the ALRs. (Compl. ¶¶ 200–04.) The First Rent Demand Letter also requested Plaintiff to resume payment of $133,998.62 per month, as originally required under the Leases, and advised that Amerson had wrongfully misrepresented to BONY the amount of Precisionaire's actual rental payments and did not advise BONY that Precisionaire had paid reduced rent under the Leases. (Compl. ¶ 207.) Thereafter, Plaintiff continued making rental payments at the lower rate provided in the Rate Letter Agreement, which Plaintiff alleges BONY accepted. (Compl. ¶ 208.)

{36} BONY subsequently sent another demand letter to Plaintiff, on November 1, 2013, this time demanding payment of the arrearage then due under the Leases in the total amount of $4,430,225.60 and threatening legal action (the "Second Rent Demand Letter"). (Compl. ¶¶ 209–12.)

{37} Plaintiff alleges that BONY entered into an agreement with Amerson, memorialized in Amerson's Second Amended Plan of Reorganization in his bankruptcy case, whereby BONY would not seek payment from Amerson's bankruptcy estate "in exchange for Amerson offering favorable testimony which would assist [BONY] in asserting its legal positions that [Plaintiff] should pay the inflated rates of rent each month for the Properties." (Compl. ¶¶ 219, 224, 227.)

{38} On May 20, 2013, BONY filed suit against Wal-Pat II and Clark, asserting that Wal-Pat II had defaulted on the Loan and had withheld information from BONY in connection with the Loan. (Compl. ¶ 229.) Plaintiff contends that BONY

has failed to prosecute its action against Clark and Wal-Pat II, (Compl. ¶¶ 243–47), and has otherwise taken action that evidences BONY's intention to collect the full amount owed under the Note from Plaintiff, rather than from Clark or Wal-Pat II. (Compl. ¶¶ 242–47.)

{39}   On December 31, 2013, Precisionaire sent a notice of lease termination (the "Lease Termination Notice") to BONY, purporting to terminate the Leases on account of alleged breaches by Wal-Pat II, and advising that Precisonaire intended to vacate the leased premises within 30 days. (Compl. ¶¶ 248–52.)

{40}   Thereafter, on January 13, 2014, Plaintiff instituted this action against BONY, Clark, Amerson, and Wal-Pat II, and Wal-Pat II's receiver, ACPM Operations, LLC ("ACPM"), stating claims for, among others, breach of contract, breach of duty of good faith and fair dealing, and fraudulent concealment, and seeking declarations that the SNDAs and Lease Guarantees are void for lack of consideration.

{41}   Plaintiff's claims against Amerson were dismissed by the Bankruptcy Court, and Plaintiff's claims against Clark were dismissed except for Plaintiff's claim for fraudulent concealment. Plaintiff voluntarily dismissed ACPM as a party to this litigation on May 21, 2014.

## III.

## LEGAL STANDARD

{42}   A motion to dismiss under Rule 12(b)(6) "'test[s] the legal sufficiency of the pleading against which [the motion] is directed.'" *Teague v. Bayer AG*, 195 N.C. App. 18, 22, 671 S.E.2d 550, 554 (2009). "[I]n ruling upon such a motion, 'the complaint is to be liberally construed, and the trial court should not dismiss the complaint unless it appears beyond doubt that [the] plaintiff could prove no set of facts in support of his claim which would entitle him to relief.'" *Meyer v. Walls*, 347 N.C. 97, 111–12, 489 S.E.2d 880, 888 (1997); *Dixon v. Stuart*, 85 N.C. App. 338, 340, 354 S.E.2d 757, 758 (1987) ("In analyzing the sufficiency of the complaint, the complaint must be liberally construed."). If the Complaint "fails to allege the substantive elements of some legally cognizable claim, or where it alleges facts that

defeat the claim, the [C]omplaint should be dismissed under Rule 12(b)(6)." *Sparrow Sys., Inc. v. Private Diagnostic Clinic, PLLC*, 2014 NCBC 69 ¶ 32 (N.C. Super. Ct. Dec. 24, 2014), www.ncbusinesscourt.net/opinions/2014_NCBC_69.pdf (citing *Hudson-Cole Dev. Corp. v. Beemer*, 132 N.C. App. 341, 345–46, 511 S.E.2d 309, 312 (1999)). "When considering a motion under Rule 12(b)(6), the court is not required to accept as true any conclusions of law or unwarranted deductions of fact in the complaint." *Oberlin Capital, L.P. v. Slavin*, 2000 NCBC 6 ¶ 9 (N.C. Super. Ct. Apr. 28, 2000), www.ncbusinesscourt.net/opinions/2000_NCBC_6.pdf (citing *Sutton v. Duke,* 277 N.C. 94, 176 S.E.2d 161 (1970)).

## IV.
## ANALYSIS

### i.  BONY's Statute of Limitations Motion

{43}   BONY seeks dismissal of Plaintiff's claims for violation of the duty of good faith and fair dealing, fraudulent concealment, and declarations that the SNDAs and Lease Guarantees are void for lack of consideration, all on the grounds that these claims are time-barred by the applicable statutes of limitations.  "Statutes of limitations are intended 'to require diligent prosecution of known claims,' and to prevent the problems inherent in litigating claims in which 'evidence has been lost, memories have faded, and witnesses have disappeared.'"  *Christie v. Hartley Constr., Inc.*, 766 S.E.2d 283, 286 (N.C. Ct. App. 2014).  "Whether a statute of limitations defense should be resolved by a Rule 12(b)(6) motion or must await a Rule 56 motion for summary judgment depends on whether the facts necessary to adjudicate the defense are demonstrated by the complaint itself or whether additional evidence must be considered." *BDM Invs. v. Lenhil, Inc.,* 2012 NCBC 7 ¶ 51 (N.C. Super. Ct. Jan. 18, 2012), www.ncbusinesscourt.net/opinions/2012_NCBC_7.pdf.  "A statute of limitations can be the basis for dismissal on a Rule 12(b)(6) motion if the face of the complaint discloses that plaintiff's claim is so barred." *Reunion Land Co. v. Village of Marvin,* 129 N.C. App. 249, 250, 497 S.E.2d 446, 447 (1998) (citation omitted).

a. <u>Duty of Good Faith and Fair Dealing/Fraudulent Concealment</u>

{44} The North Carolina General Statutes require that actions upon contracts, obligations or liability arising out of a contract be brought within three (3) years from the date of the breach. N.C.G.S. § 1-52(1) (2014); *Abram v. Charter Med. Corp.*, 100 N.C. App. 718, 721, 398 S.E.2d 331, 333 (1990). The three-year statute of limitations for contract claims likewise applies to claims for breach of the duty of good faith and fair dealing. *See, e.g., Ussery v. Branch Banking & Trust Co.*, 743 S.E.2d 650, 654 (N.C. Ct. App. 2013).

{45} "The statute [of limitations] [on a breach of contract claim] begins to run on the date the promise is broken." *PharmaResearch Corp. v. Mash*, 163 N.C. App. 419, 424, 594 S.E.2d 148, 152 (2004). The same is true for a claim for breach of the covenant of good faith and fair dealing. *See, e.g., Piles v. Allstate Ins. Co.*, 187 N.C. App. 399, 405, 653 S.E.2d 181, 185–86 (2007) (holding claim for breach of the covenant of good faith and fair dealing arises when contract breached).

{46} Although N.C.G.S. §1-52(1) does not expressly contain a discovery clause, *see Brantley v. Dunstan*, 10 N.C. App. 706, 708–09, 179 S.E.2d 878, 880 (1971), our courts have also recognized that a breach of contract claim accrues at the time of notice of the breach. *See, e.g, Henlajon, Inc. v. Branch Highways, Inc.*, 149 N.C. App. 329, 335, 560 S.E.2d 598, 603 (2002) ("The claim accrues at the time of notice of the breach."); *Howard v. Hamilton*, 28 N.C. App. 670, 677, 222 S.E.2d 913, 918–19 (1976) ("We hold that plaintiffs failed to carry the burden of showing that the actions were instituted within three years after they discovered, or by the exercise of due care should have discovered, the alleged breach of contract and fraud."); *Jones v. Jones*, 2015 N.C. App. LEXIS 191, 5 (N.C. Ct. App., Mar. 17, 2015) (unpublished) (to similar effect).

{47} Similarly, under N.C.G.S. § 1-52(9), "[f]or relief on the ground of fraud or mistake; the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake." Our courts have defined "discovery" in this context to "mean[] either actual discovery or when

the fraud should have been discovered in the exercise of 'reasonable diligence under the circumstances." *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 386 (2007).

{48} Based on the above, the Court concludes that the applicable statute of limitations on Plaintiff's claims for alleged violation of the covenant of good faith and fair dealing and for fraudulent concealment is three years from the date Plaintiff discovered, or by the exercise of reasonable diligence, should have discovered, the alleged facts giving rise to Plaintiff's claims.

{49} Plaintiff alleges that BONY is liable for breach of the covenant of good faith and fair dealing as a consequence of LaSalle Bank's alleged failure to inform "disinterested parties at [Flanders] (1) of the true nature of the Loan;" "(2) that the Leases contained above-market rates," and "(3) that [Flanders'] insiders, Amerson and Clark, were utilizing the Leases to obtain $11,500,000.00 with limited or no obligations to repay that money." (Compl. ¶¶ 353–55.) Plaintiff alleges the same facts to support its claim for fraudulent concealment and additionally asserts that "[t]he Original Lender, Amerson and Clark withheld this information from [Plaintiff] with the intent to deceive [Plaintiff] and to ensure that it would not object or raise issue with the Loan." (Compl. ¶ 368.)

{50} BONY contends that Plaintiff's claims are time-barred because the statute of limitations began to run under N.C.G.S. § 1-52(9) when Plaintiff became aware of the allegedly above-market rents in the Leases upon Plaintiff's receipt of the Faris report in June 2010 and thereafter reduced the rents it paid under the Leases. *See, e.g., Vail v. Vail,* 233 N.C. 109, 106, 116 S.E.2d 202, 207 (1951) (statute of limitations on fraud claim begins "when the aggrieved party discovers the facts constituting the fraud, or when, in the exercise of reasonable diligence, such facts should have been discovered"); *Bolich v. Ins. Co.,* 206 N.C. 144, 156, 173 S.E.2d 320, 327 (1934) (power to rescind contract procured by fraud ends when "after discovering the fraud, the injured party voluntarily does some act in recognition of the contract"). In particular, BONY argues that once Plaintiff became aware of the allegedly above-market rents in June 2010, Plaintiff had a duty to inquire into the relevant facts, an inquiry, which, in the exercise of reasonable diligence, should

have uncovered the facts constituting the alleged fraud. BONY argues that Plaintiff's claim should therefore be dismissed as time-barred because the Complaint was filed more than three years later.

{51} Plaintiff contends that it should have the benefit of the discovery rule because LaSalle Bank's alleged failure to disclosure "only became apparent to [Plaintiff] upon Wal-Pat II's default under the [L]oan and [BONY's] demand that [Plaintiff] pay higher rates of rent than it had been paying for many years," all of which occurred in 2013 and less than three years before Plaintiff filed the Complaint. (Compl. ¶ 357.) Although Plaintiff admits that it was informed of the allegedly above-market rates in the Leases in the Faris report in June 2010, Plaintiff contends that it was not aware, and with the exercise of reasonable diligence, could not have been aware, that Plaintiff would ultimately bear responsibility for paying back the Loan with little or no required participation from Wal-Pat II, Amerson and Clark. In particular, Plaintiff contends that "disinterested parties" at Plaintiff were not privy to the terms of the Note until shortly before Plaintiff filed this action and, accordingly, had no knowledge of Amerson and Clark's limited liability for the Loans. (Compl. ¶ 365.) As a result, Plaintiff contends that it filed this action as soon as practicable after learning the facts giving rise to Defendants' liability.

{52} Under North Carolina law, "[o]rdinarily, the question of whether a cause of action is barred by the statute of limitations is a mixed question of law and fact. However, when the bar is properly pleaded and the facts are admitted or are not in conflict, the question of whether the action is barred becomes one of law, and [dismissal] is appropriate." *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985); *see, e.g., Piles,* 187 N.C. App. at 405, 653 S.E.2d at 186 ("The date of [the plaintiff's] discovery of the alleged fraud or negligence—or whether she should have discovered it earlier through reasonable diligence—is a question of fact for a jury . . . ."); *Forbis*, 361 N.C. at 524, 649 S.E.2d at 386 (2007) ("Ordinarily, a jury must decide when fraud should have been discovered in the exercise of reasonable diligence under the circumstances.").

{53} Although BONY argues that Plaintiff was on notice upon learning of the allegedly above-market rents in June 2010 and, in light of Amerson's and Clark's departure from Plaintiff prior to that time, could have and should have investigated to determine whether LaSalle Bank "had acted fairly with [Plaintiff] in connection with the Loan" and whether Plaintiff had "potential liabilities" to LaSalle Bank or BONY, (BONY Br. Supp. Mot., p. 10), the Court is not prepared to conclude on the facts alleged at this early stage of the litigation that Plaintiff's receipt of the Faris report in June 2010 should have put Plaintiff on notice of the alleged fraud or that the alleged fraud should have otherwise been promptly discovered in the exercise of reasonable diligence.

{54} Accordingly, based on the allegations of the Complaint, the Court cannot conclude that Plaintiff's claims for breach of the duty of good faith and fair dealing and for fraudulent concealment should be dismissed as time-barred as a matter of law. Thus, the Court concludes that BONY's motion to dismiss these claims on statute of limitations grounds should be denied.

b. <u>Declaration that the SNDAs and Lease Guarantees are Void for Lack of Consideration.</u>

{55} BONY asks the Court to apply the three-year statute of limitations applicable to contract actions to Plaintiff's claims seeking a declaration that the SNDAs and Lease Guarantees between LaSalle Bank and Plaintiff are void for lack of consideration. In particular, BONY argues that Plaintiff's claims are effectively claims for rescission of the SNDAs and the Lease Guarantees and thus are subject to the three-year statute of limitations under either N.C.G.S. § 1-52(9) for actions to rescind based on fraud or mistake or under N.C.G.S. § 1-52(1) as an action for breach of contract. (BONY's Reply Supp. Statute of Limitations Mot., p. 3.). Where the statute of limitations has been properly applied to a plaintiff's underlying claims for relief, "no relief can be afforded under the Declaratory Judgment Act." *Ludlum v. State*, 742 S.E.2d 580, 582 (N.C. Ct. App. 2013).

{56} Plaintiff, however, contends that its claims are not for rescission or breach but are asserted defensively, alleging that "[a]n actual justiciable controversy exists

among [Plaintiff], on the one hand, and [BONY], on the other hand, regarding the enforceability of the [SNDAs and Lease Guarantees] because [BONY] attempts to enforce the [SNDAs and Lease Guarantees] against [Plaintiff] in the First Rent Demand Letter and the Second Rent Demand Letter" (Compl. ¶ 291), and seeking a declaration that the [SNDAs and Lease Guarantees] are void and unenforceable against Plaintiff (Compl. ¶ 297). As such, Plaintiff contends these claims for declaratory judgment are not subject to any statute of limitations. *See generally* 51 Am.Jur.2d Limitations of Actions § 98 ("Statutes of limitations are not intended to affect matters asserted strictly in the defense of an action . . . . A statute of limitations does not bar a pure defense, or a defense involving no claim for affirmative relief, or a defense which, if given effect, would negate the plaintiff's right to recover."); *Pringle v. Water Quality Ins. Syndicate*, 646 F. Supp. 2d 1161, 1171–72 (C.D. Cal. 2009) ("If the result the defendant seeks is simply that he or she owes no obligations under an agreement alleged by the plaintiff, the matter must be deemed a defense to which the statute of limitations does not apply."); *Grynberg v. Waltman*, 946 P.2d 473, 475 (Colo. App. 1997) ("A statute of limitations is not a bar to a claim asserted as a defense. If a plaintiff's suit pertains to rights asserted by a defendant, then such suit raises a question of defense rather than a request for affirmative relief.").

{57} The Court does not find it necessary to resolve the parties' conflicting legal arguments because BONY's Motion must be denied under either party's preferred analysis. First, if Plaintiff is correct that its claim should be viewed as a defensive claim that is not subject to a statute of limitations, BONY's Motion must obviously be denied. Likewise, if BONY is correct that Plaintiff's declaratory judgment claims are simply claims for rescission subject to the three-year statute of limitations set forth in N.C.G.S. §§ 1-52(1) and 1-52(9), the Court must deny BONY's Motion nonetheless because the Court cannot conclude at this early stage of the litigation that Plaintiff's receipt of the Faris report in June 2010 should have put Plaintiff on notice that the SNDAs and Lease Guarantees were not supported by consideration, or that the alleged lack of consideration should have otherwise been promptly

discovered in the exercise of reasonable diligence.  Thus, the Court concludes that BONY's Motion to Dismiss Plaintiff's declaratory judgment claims on statute of limitations grounds should be denied.

ii.  BONY's Motion to Dismiss

{58}   BONY also seeks to dismiss Plaintiff's claims for violation of the duty of good faith and fair dealing and fraudulent concealment on grounds that they each fail to state a claim upon which relief can be granted.

a.  Breach of Duty of Good Faith and Fair Dealing

{59}   The North Carolina courts have recognized a limited duty of good faith and fair dealing in the creditor-guarantor context.  *See, e.g., Richardson v. Bank of Am., N.A.*, 182 N.C. App. 531, 557, 643 S.E.2d 410, 426 (2007).  "Although there is no fiduciary relationship between creditor and guarantor, in some instances a creditor owes a duty to the guarantor to disclose information about the principal debtor." *Gant v. NCNB Nat'l Bank*, 94 N.C. App. 198, 199, 379 S.E.2d 865, 867 (1989).

> If the creditor knows, or has good grounds for believing that the surety [or guarantor] is being deceived or misled, or that he is induced to enter into the contract in ignorance of facts materially increasing the risks, of which he has knowledge, and he has an opportunity, before accepting his undertaking, to inform him of such facts, good and fair dealing demand that he should make such disclosure to him; and if he accepts the contract without doing so, the surety [or guarantor] may afterwards avoid it.

*Id.* (alteration in original) (quoting *First-Citizens Bank & Trust Co. v. Akelaitis,* 25 N.C. App. 522, 526, 214 S.E. 2d 281, 284 (1975)); *Richardson*, 182 N.C. App. at 557, 643 S.E.2d at 427.  The creditor's duty to disclose may extend to include information concerning the borrower's financial state if the creditor knows or has reason to believe that the surety or guarantor is being deceived or misled about that information. *See, e.g., Whisnant v. Carolina Farm Credit,* 204 N.C. App. 84, 91, 693 S.E.2d 149, 155 (2010); *Gant*, 94 N.C. App. at 200, 379 S.E.2d at 867; *Akelaitis*, 25 N.C. App. at 526, 214 S.E.2d at 284.

{60}   Plaintiff contends that if LaSalle Bank had disclosed that the Loan benefitted Amerson and Clark without any benefit to Plaintiff; Amerson, Clark and

Wal-Pat II had little or no liability under the Loan; and that the Loan was structured so that Plaintiff "would be the sole party responsible for repaying the indebtedness through the inflated Leases," "the disinterested parties [at Flanders] would have learned the true nature of the Loan and the Leases before becoming involved in the Loan" and caused Plaintiff not to enter the transaction. (Pl.'s Resp. BONY's Mot. Dismiss, p. 9; Compl. ¶¶ 350–61). As such, Plaintiff contends that it has stated a claim for breach of the duty of good faith and fair dealing against BONY, as successor in interest to LaSalle Bank.

{61} The Court concludes, however, that the facts of this case do not fall within the scope of the *Gant, Akelaitis* and *Whisnant* line of cases that impose a duty on a creditor to disclose information about the borrower to a guarantor in certain limited circumstances.

{62} In particular, as made plain on the face of the Complaint, LaSalle Bank negotiated the guaranty transaction with Amerson and Clark – Flanders' primary executive officers and members of Flanders' Board of Directors. Plaintiff does not allege that Clark and Amerson were limited in their authority to enter the Loan transaction, including the Lease Guarantees, the SNDAs and the ALRs, nor does Plaintiff allege that LaSalle Bank was aware of any limitation on Clark's and Amerson's authority to enter the transaction and execute the Loan and Lease Guarantee documents on behalf of Plaintiff. Indeed, Plaintiff avers that the Leases were presented to the Flanders' Board of Directors, acknowledging that "disinterested parties" at Flanders were aware of the Leases. (Compl. ¶ 83.) Further, Plaintiff does not allege facts showing that LaSalle Bank had knowledge that Amerson and Clark withheld any material information from the Flanders Board of Directors concerning the Loan transaction, including Amerson and Clark's ownership interest in Wal-Pat II or the fact that Wal-Pat II, Amerson and Clark had little or no liability on the Loan.

{63} As such, the Court concludes that, as pled, Amerson and Clark were corporate agents acting within the scope of their apparent authority vis-à-vis LaSalle Bank, and Plaintiff has not pled facts showing that LaSalle Bank had

knowledge to the contrary. As a result, the Court concludes that LaSalle Bank was entitled to negotiate with Amerson and Clark at arm's length as agents of Plaintiff, and that LaSalle Bank did not have a duty to disclose any material information to the disinterested directors of Flanders. *See, e.g., First Union Nat'l Bank v. Brown*, 166 N.C. App. 519, 532–33, 603 S.E.2d 808, 818 (2004) (concluding that bank may not be held liable "for a breach of good faith and fair dealing or non-disclosure when negotiating with a[n] officer of a company having apparent authority") (citing *Furman Lumber, Inc. v. Mountbatten Sur. Co.*, 1997 U.S. Dist. LEXIS 12118, \*35 (E.D. Pa., Aug. 6, 1997) (creditors who had made the required disclosure to an agent of the guarantor "were under no duty to take any further affirmative action").

{64} Accordingly, the Court concludes that Plaintiff's claim for breach of the duty of good faith and fair dealing should be dismissed for failure to state a claim under Rule 12(b)(6).

b.      Fraudulent Concealment

{65} To withstand a motion to dismiss a claim for fraudulent concealment, a plaintiff must allege the following:

> (1) the relationship [between plaintiff and defendant] giving rise to the duty to speak; (2) the event or events triggering the duty to speak and/or the general time period over which the relationship arose and the fraudulent conduct occurred; (3) the general content of the information that was withheld and the reason for its materiality; (4) the identity of those under a duty who failed to make such disclosures; (5) what [the defendant] gained by withholding information; (6) why plaintiff's reliance on the omission was both reasonable and detrimental; and (7) the damages proximately flowing from such reliance.

*Lawrence v. UMLIC-Five Corp.*, 2007 NCBC 20 ¶ 39 (N.C. Super. Ct. June 18, 2007), www.ncbusinesscourt.net/opinions/2007%20NCBC%2020.pdf. Further, "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." N.C.G.S § 1A-1, Rule 9(b) (2015). The "particularity requirement is met by alleging time, place and content of the fraudulent representation, identity of the person making the representation and what was

obtained as a result of the fraudulent acts or representations." *Terry v. Terry,* 302 N.C. 77, 85, 273 S.E.2d 674, 678 (1981).

{66} The Court concludes that the same reasons compelling dismissal of Plaintiff's claim for breach of the duty of good faith and fair dealing also compel the dismissal of Plaintiff's claim for fraudulent inducement.

{67} In addition, although Plaintiff conclusorily alleges that LaSalle Bank "acted with the intent to deceive [Plaintiff] to ensure that [Plaintiff] would not object or raise issue with the Loan," (Compl. ¶ 368), Plaintiff fails to allege any facts in support of its contention or otherwise articulate facts showing that LaSalle Bank was a participant in an allegedly fraudulent scheme or took affirmative steps to conceal material facts from "disinterested parties" at Flanders that the Bank knew the "disinterested parties" at Flanders did not know. *See id.* ("The particularity required [to state a fraud claim] cannot be satisfied by using conclusory language or asserting fraud through mere quotes from the statute."); *Sharp v. Teague,* 113 N.C. App. 589, 597, 439 S.E.2d 792, 797 (1994) ("Mere generalities and conclusory allegations of fraud will not suffice."); *Harton v. Harton*, 81 N.C. App. 295, 298, 344 S.E.2d 117, 119 (1986) (recognizing fraud claim "when a party has taken affirmative steps to conceal material facts from the other").

{68} Further, although contending that LaSalle Bank had a duty to disclose the "true facts" to "disinterested parties" at Flanders, Plaintiff fails to allege facts showing that a fiduciary or other confidential relationship existed between Plaintiff and LaSalle Bank that might give rise to a duty to disclose, *see, e.g., Kaplan v. O.K. Techs., LLC*, 196 N.C. App. 469, 474, 675 S.E.2d 133, 137 (2009) ("Although our courts have broadly defined fiduciary relationships, no such relationship arises absent the existence of dominion and control by one party over another."). Plaintiff also fails to allege facts showing that any "disinterested parties" were ignorant and unable to discover the "true facts" through reasonable diligence, or that the "disinterested parties" were actually deceived by, and in fact relied upon, any representations from, or omissions by, anyone at LaSalle Bank at any time. *See generally Hardin v. KCS Int'l Inc.,* 199 N.C. App. 687, 697, 682 S.E.2d 726, 734

(2009) ("A duty to disclose arises where: (1) 'a fiduciary relationship exists between the parties to the transaction'; (2) there is no fiduciary relationship and 'a party has taken affirmative steps to conceal material facts from the other'; and (3) there is no fiduciary relationship and 'one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence.'").

{69} Finally, the Court concludes that Plaintiff has failed to allege the circumstances constituting the alleged fraud with sufficient particularity – most significantly by failing to identify the specific individuals at LaSalle Bank who had knowledge that "disinterested parties" at Flanders did not know the material terms and circumstances of the Loan transaction and nevertheless chose not to disclose this information to the "disinterested parties," as well as when and how the alleged fraud occurred. *See, e.g., Coley v. North Carolina Nat'l Bank*, 41 N.C. App. 121, 125–26, 254 S.E.2d 217, 220 (1979) (dismissing fraud claim and stating "[i]t is not sufficient to conclusorily allege that a corporation made fraudulent misrepresentations . . . . It would be manifestly unfair to require a corporation to attempt to defend an action for fraud without being informed as to which of its officers, agents, or employees purportedly made the misrepresentations, as well as to all of the facts and circumstances surrounding the transaction"); *Bob Timberlake Collection, Inc. v. Edwards*, 176 N.C. App. 33, 39, 626 S.E.2d 315, 321 (2006) (dismissing fraud claim where plaintiff failed to identify which representative of defendant gave plaintiff false information or where and when plaintiff received it); *Stec v. Fuzion Inv. Capital, LLC*, 2012 NCBC 24 ¶ 54, (N.C. Super. Ct. Apr. 30, 2012), www.ncbusinesscourt.net/opinions/2012_NCBC_24.pdf (dismissing fraud claim because plaintiff failed to identify who engaged in actionable conduct and when and where conduct occurred).

{70} Plaintiff also fails to allege who the "disinterested parties" at Flanders were, and whether any "disinterested parties" existed at Flanders that could have prevented Flanders from entering the Loan and Lease Guarantee transactions had the "true facts" been disclosed. *See, e.g., James B. Taylor Family L.P. v. Bank of*

*Granite,* 762 S.E.2d 531 (N.C. Ct. App. 2014) (unpublished) (dismissing fraud claim where allegations not "definite and specific"); *Deluca v. River Bluff Holdings II, LLC,* 2015 NCBC 11 ¶ 46 (N.C. Super. Ct. Jan. 28, 2015), www.ncbusinesscourt.net/opinions/2015_NCBC_11.pdf (dismissing fraud claim where plaintiffs did not "sufficiently allege[] any actionable injury resulting from [d]efendants' alleged misrepresentations").

{71} Accordingly, the Court concludes that Plaintiff has failed to allege the circumstances constituting the alleged fraud with sufficient particularity to sustain its claim for fraudulent concealment or otherwise allege facts showing that LaSalle Bank had a duty to make the disclosures that Plaintiff contends should have been made based on the facts pled in the Complaint. As a result, the Court concludes that Plaintiff's claim for fraudulent concealment should be dismissed.[2]

iii. Clark's Motion to Dismiss

{72} Clark seeks dismissal of Plaintiff's claims for contribution and indemnity (claim 9), tortious interference with contract (claim 11), and fraudulent concealment (claim 13). The bankruptcy court dismissed Plaintiff's claim for indemnity against Clark, however, and Plaintiff has stipulated that its claim for tortious interference with contract is not alleged against Clark. As a result, the Court concludes that these two claims are dismissed as to Clark. The Court thus decides Clark's Motion to Dismiss solely as to Plaintiff's claim for fraudulent concealment.

{73} To establish its fraudulent concealment claim, Plaintiff alleges that "[u]nder the circumstances and in light of his positions with [Plaintiff], Clark owed a duty to inform [Plaintiff] of the Loan transaction, the limited or absence of liability of Wal-Pat II, Amerson, and Clark to pay back the $11,500,000.00 to be received under the Loan, [Plaintiff's] status as the party who would be ultimately

---

[2] BONY contends that Plaintiff's claim for fraudulent concealment should be dismissed because BONY cannot be held liable for the wrongful acts committed by LaSalle Bank by operation of N.C.G.S. § 25-3-306. In light of its resolution of BONY's Motion to Dismiss, the Court does not reach BONY's argument, and for purposes of BONY's Motion, the Court assumes without deciding that N.C.G.S. § 25-3-306 does not require dismissal of Plaintiff's claim.

responsible for repaying the Loan, and that the Leases contained above-market rates which made the Loan possible." (Compl. ¶ 364.)

{74} Clark first contends Plaintiff has failed to plead fraudulent concealment because "[Plaintiff] makes no allegation that anything was in fact concealed from them." (Clark's Br. Supp. Mot. Dismiss, p. 8.) The "general content of the information that was withheld and the reason for its materiality" are necessary allegations in fraudulent concealment claims. *Lawrence*, 2007 NCBC 20 at ¶ 39. Clark, however, admits that Plaintiff has identified the information that Plaintiff claims Clark should have disclosed; i.e., the nature of the Loan; Wal-Pat II, Clark, and Amerson's limited or absence of liability in connection with the Loan; and Plaintiff's responsibility for paying back the loan. (*See* Clark's Br. Supp. Mot. Dismiss, p. 8.) North Carolina law provides that "where . . . a director proposes corporate action for which [he] has a personal interest or agenda, there exists a duty of loyalty and a duty of candor to the corporation and the other directors to disclose the personal interest." *Maurer v. SlickEdit, Inc.,* 2006 NCBC 1 ¶ 89 (N.C. Super. Ct. Feb. 3, 2006), www.ncbusinesscourt.net/opinions/2006%20NCBC%201.htm. Accordingly, the Court concludes that Plaintiff has sufficiently alleged that Clark concealed material information from Plaintiff.

{75} Next, Clark contends Plaintiff has failed to allege that Plaintiff reasonably relied on Clark's omissions. (Clark's Br. Supp. Mot. Dismiss, p. 8–9); *see Lawrence*, 2007 NCBC 20 ¶ 39 (plaintiff must plead reasonable reliance). In response, Plaintiff notes that it alleged in its Complaint that it "was not privy to the information which would have allowed it to understand the nature of the Loan transaction" and thus Plaintiff's sole responsibility for repaying the Loan, (Compl. ¶ 365), and that Plaintiff would not have entered the transaction had it known the true facts. The Court finds that Plaintiff has sufficiently pled its reasonable reliance on Clark's alleged omissions to satisfy the requirements of Rule 12(b)(6).

{76} Last, as an alternative ground for dismissal, Clark contends that Plaintiff's allegations of fraud do not rise to the pleading standard set forth in Rule 9. The

Court disagrees and finds that Plaintiff has satisfied Rule 9's particularity requirements for purposes of Clark's Motion to Dismiss.

{77} Accordingly, the Court concludes that Plaintiff has met its pleading burden to state a claim against Clark for fraudulent concealment, and Clark's Motion to Dismiss should therefore be denied.

iv. <u>Plaintiff's Motion to Dismiss</u>

{78} Plaintiff seeks dismissal of BONY's fourth counterclaim for unfair and deceptive trade practices ("UDTP"). "A claim of unfair and deceptive trade practices under N.C.G.S. § 75-1.1 of the North Carolina General Statutes requires proof of three elements: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, which (3) proximately caused actual injury to the claimant." *Nucor Corp. v. Prudential Equity Grp., LLC*, 189 N.C. App. 731, 738, 659 S.E.2d 483, 488 (2008) (citation omitted). An act is unfair "if it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. An act or practice is deceptive if it has the capacity or tendency to deceive." *Suntrust Bank v. Bryant/Sutphin Prop., LLC*, 732 S.E.2d 594, 598 (N.C. Ct. App. 2012).

{79} North Carolina law is clear that a mere breach of contract, albeit willful or intentional, cannot serve as the sole basis for a UDTP claim. *Mitchell v. Linville*, 148 N.C. App. 71, 74, 557 S.E.2d 620, 623 (2001). Nevertheless, substantial "aggravating circumstances can elevate a breach of contract into an unfair and deceptive practice if the conduct of the breaching party is deceptive." *Lake Mary Ltd. P'ship v. Johnston*, 145 N.C. App. 525, 533, 551 S.E.2d 546, 553 (2001); *Eastover Ridge, LLC v. Metric Constructors, Inc.*, 139 N.C. App. 360, 368, 533 S.E.2d 827, 833 (2000) (plaintiff must show "substantial aggravating circumstances attending the breach to recover under the Act, which allows for treble damages"). Our courts have recognized, however, that "[i]t is 'unlikely that an independent tort could arise in the course of contractual performance, since those sorts of claims are most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations.'" *Id.* (quoting *Broussard v. Meineke Muffler Discount, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998)).

{80}   BONY contends that its allegations that Plaintiff reduced rental payments to Wal-Pat II, purported to terminate the Leases, and concealed those actions from BONY constitute deceptive acts that fall within the aggravating circumstances exception to the general rule.  (BONY's Resp. Pl.'s Mot., p. 5.)  The Court disagrees, however, and instead concludes that the alleged acts BONY relies upon for its UDTP claim suggest, at most, an intentional breach of contract, and not an unfair and deceptive trade practice under Section 75-1.1.  *See Boyd v. Drum*, 129 N.C. App. 586, 594, 501 S.E.2d 91, 97 (1998) (mere breach of contract where failure to pay note suggested "merely a business deal gone sour"); *Rider v. Aderhold*, 2013 N.C. App. LEXIS 749, *11 (N.C. Ct. App., July 16, 2013) (unpublished) (mere breach of contract where bank allegedly improperly disbursed funds to contractor); *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700 (1992) (mere breach of contract where bank allegedly breached note and agreement by releasing deeds of trust); *cf. Garlock v. Henson*, 112 N.C. App. 243, 435 S.E.2d 114 (1993) (aggravating circumstances where defendant "forged a bill of sale in an attempt to extinguish [the] plaintiff's ownership interest in the bulldozer" and "deprived [the] plaintiff for three years of money he was unquestionably entitled to"); *Foley v. L & L Int'l, Inc.*, 88 N.C. Ap. 710, 364 S.E.2d 733 (1988) (aggravating circumstances where corporate defendant kept customer's down payment on car for seven months without attempting to acquire the car it had promised to sell).

{81}   In addition, the Court of Appeals has recently found that aggravating circumstances did not exist to elevate a breach of contract counterclaim into an UDTP claim where defendants, like BONY here, "did not allege that [the] plaintiff intended to break its promise at the time that it made the promise." *Wells Fargo Bank, N.A. v. Corneal*, 767 S.E.2d 374, 378 (N.C. Ct. App. 2014).

{82}   For each of these reasons, therefore, the Court concludes that BONY's UDTP claim is essentially a claim for intentional breach of contract and therefore should be dismissed.

V.

CONCLUSION

{83} For the foregoing reasons, the Court **DENIES** BONY's Statute of Limitations Motion; **GRANTS** BONY's Motion to Dismiss; **DENIES** Clark's Motion to Dismiss; and **GRANTS** Plaintiff's Motion to Dismiss and **ORDERS** that:

> a. Plaintiff's claims for violation of the covenant of good faith and fair dealing and fraudulent concealment are hereby **DISMISSED with prejudice**; and

> b. BONY's counterclaim for unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1 is hereby **DISMISSED with prejudice**.

{84} All other requested relief is **DENIED**.


**SO ORDERED**, this the 7th day of April 2015.